UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

NATHAN JACKSON                                                                                    Plaintiff

v.                                                                               Civil Action No. 3:23-cv-419-RGJ

ABBOTT LABORATORIES INC.,                                                                     Defendants
ST. JUDE MEDICAL, LLC,
ST. JUDE LABORATORIES LLC

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Defendants Abbott Laboratories Inc. ("Abbott") and St. Jude Medical, LLC ("St. Jude")[1] move to dismiss Plaintiff Nathan Jackson's ("Jackson") complaint pursuant to Fed. R. Civ. P. 12(b)(6). [DE 12, Def.'s Mot. Dismiss].[2] Abbott and St. Jude also request that judicial notice be taken of four documents. [DE 12-2 at 2]. Jackson responded, [DE 21, Resp. Mot. Dismiss.], and Abbott and St. Jude replied. [DE 25, Reply Supp. Mot. Dismiss.]. This matter is ripe. For the following reasons, Defendants' Motion to Dismiss [DE 12] is **GRANTED** as set forth below.

### I.   BACKGROUND

Jackson sued Abbott and St. Jude on August 10, 2023. [DE 1, Compl., at 1]. Jackson's original complaint contained seven counts: (1) strict liability for a manufacturing defect, (2) strict products liability for a design defect, (3) strict products liability for failure to warn, (4) breach of

---

[1] Abbott and St. Jude claim that "St. Jude Laboratories" does not exist. Jackson fails to respond to this claim. If Jackson brings any new claim against Abbott and St. Jude, he is advised to investigate the matter to determine if St. Jude Laboratories is in fact a relevant party.
[2] The Joint Local Rules for the Eastern and Western Districts of Kentucky contemplate a single, unified motion and memorandum. *See* Local Rule 7.1. Going forward, counsel is advised to file a unified motion.

1

express warranty, (5) breach of implied warranty, (6) Kentucky Consumer Protections Act violations, and (7) negligence. *Id.* [3]

### A. The Implantable Cardioverter Defibrillator (AICD)

Jackson alleges that the Implantable Cardioverter Defibrillator (AICD) ("Device"), manufactured by St. Jude under the name the Gallant ICD, is defective [DE 1 at 3; DE 12 at 52]. Under the FDA's premarket approval process the Device is labeled as a Class III medical device. *Id.* As such, its design, manufacture, and labeling were specifically approved by the FDA. *Id.* The FDA has never revoked or withdrawn approval for the Device. [DE 12-2, FDA Premarket Approval Database Listing for the device at 92].[4] Jackson claims that the Device has been recalled on three occasions. [DE 1 at 2]. First, in 2015, St. Jude Medical issued a recall of certain defibrillators as a result of defective batteries that would lose charge without warning. *Id.* Next, in October 2016, the FDA issued a second class 1 recall of certain defibrillators due to exposed aluminum wires that prevented defibrillation. *Id.* at 3. Finally, Abbott issued a third recall in March 2021 due to another issue with premature battery depletion. *Id.* The last alleged recall occurred seventeen months before Jackson's AICD was implanted. *Id.*

### B. Jackson's Device

Jackson alleges that on or around August 4, 2022, he had an AICD Device implanted into his chest to monitor and correct his abnormal heart rhythm. [DE 1 at 3]. Jackson contends that shortly after the impanation of his AICD, he began experiencing serious heart pain and was admitted to the hospital. *Id.* Jackson further contends that this pain resulted from electric shocks

---

[3] Count 8, Jackson's claim for punitive damages is "actually a prayer for relief, not a separate cause of action[.]" *Baird v. Bayer Healthcare Pharms., Inc.*, No. CIV.A. 6:13-077-DCR, 2013 WL 5890253, at *10 (E.D. Ky. Oct. 31, 2013).
[4] This document is found outside of the pleadings, however, the court finds that it proper to take judicial notice of these facts as explained in section 1 of the discussion.

2

to his heart, and that he was told these shocks resulted from a malfunction in his device before he was discharged from the hospital. *Id*. As a result, Jackson claims that he has developed worsened heart conditions, pain, and anxiety, which has caused him to suffer harm, damages, and economic loss. *Id*.

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). As stated, when considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an

3

insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64).

The standard for pleading is no longer the "no provable facts" standard from *Conley v. Gibson*. *Conley v. Gibson,* 355 U.S. 41, 45 (1957), abrogated by *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007). The pleading standards set forth in *Conley* was overruled in 2007 by *Bell Atl. Corp. v. Twombly,* which explicitly replaced this standard with the stricter "plausibility" pleading standard that governs today. *Twombly*, 550 U.S. at 570.

### III.  DISCUSSION

**1. Abbott and St. Jude's Request for Judicial Notice**

Abbott and St. Jude request judicial notice of four FDA released documents in support of their motion to dismiss. [DE 12-2]. These documents are (1) an FDA Product Classification; (2) The FDA Premarket Approval ("PMA") Letter for St. Jude Medical's Cardioverter Defibrillator with Cardiac Resynchronization Therapy (PMA No. P910023); (3) The FDA PMA Supplement Approval Letter for St. Jude Medical's Cardioverter Defibrillator with Cardiac Resynchronization Therapy (PMA No. P910023), dated June 30, 2020; and (4) FDA Premarket Approval Database Listing for the device ("PMA Database List"). [DE 12-2 at 2-3].

Jackson contends that taking judicial notice of documents that were not mentioned in the complaint would convert this Motion to Dismiss into a motion for summary judgment under Fed. R. Civ. P. 12(d6). [DE 21 at 7-9]. Generally, "matters outside of the pleadings are not to be considered by a court in ruling on a . . . motion to dismiss." *Weiner v. Klais & Co.,* 108 F.3d 86, 88 (6th Cir. 1997). As such, if a court considers matters outside the plaintiff's complaint, it must usually treat the motion to dismiss "as one for summary judgment under Rule 56." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (quoting Fed. R. Civ. P. 12(d)). That said,

4

according to the Sixth Circuit, a court may consider "public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies" when ruling on a motion to dismiss, which would not require converting it to a motion for summary judgment under Rule 56. *Armengau v. Cline*, 7 F. App'x. 336, 344 (6th Cir. 2001) (*citing Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)). The Court may take judicial notice of public documents and government documents because their sources "cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Jones*, 521 F.3d at 562 (courts may take judicial notice of public records).

The Court may properly take judicial notice of all four of the documents requested by Abbott and St. Jude, as all four qualify as publicly available government documents. Both the Sixth Circuit and Western District of Kentucky have on many previous occasions taken judicial notice of facts contained within FDA records and reports because "they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Mitchell v. Qualitest Pharms.,* 187 F. Supp. 3d 831, 832 (W.D. Ky. 2016), dismissed, No. 16-5650, 2017 WL 11779566 (6th Cir. Mar. 3, 2017). All four of these documents are official FDA reports and regulations that are freely accessible online. Furthermore, as both parties concede the relevant facts underlying this request for notice [DE 21 at 172, 178, 183], they do not change this Court's analysis. As a result, Abbott and St. Jude's Request for Judicial Notice [DE 12] is **GRANTED**.

2. **Federal Preemption**[5]

Abbott and St. Jude seek dismissal of Jackson's Complaint, arguing that every claim is both expressly and impliedly preempted, as well as inadequately pleaded under *Iqbal* and *Twombly*

---

[5] This Court is aware of the decision of *Smith v. ZOLL Med. Corp.*, which states that courts should first address the sufficiency of the pleading for each individual claim before ruling on preemption. 505 F. Supp. 3d 787 (W.D. Tenn. 2020). But *ZOLL* is an outlier in practice as the majority of courts choose to address preemption first. Since preemption under the Medical Device Amendments is statutory, the Court does not find a constitutional question that would be avoided by addressing the pleading of claims first as was stated in *ZOLL*.

5

[DE 12 at 7]. Jackson counters that these claims are not preempted by federal law because statutory preemption is not absolute, and his claims are based on "parallel" state law violations permitted by the Medical Device Amendments. [DE 21 at 16].

*A. Legal background*

In 1976, Congress enacted the [Medical Device Amendments ("MDA")] to govern medical devices intended for human use. The MDA grouped medical devices into one of three classes based on their risk to human health. *See* 21 U.S.C. § 360c(a)(1). Devices that posed minimal risk fell in Classes I and II, while those devices which either "present a potential unreasonable risk of illness or injury' or are 'for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health" are classified as Class III devices. 21 U.S.C. § 360c(a)(1)(A), (B) and (C); *White v. Stryker Corp.,* 818 F. Supp. 2d 1032, 1034 (W.D. Ky. 2011).

> Prior to marketing and sale, a Class III device must undergo 'premarket approval to provide reasonable assurance of its safety and effectiveness.' 21 U.S.C. § 360c(a)(1)(C). The premarket approval, or "PMA," process is considered lengthy and rigorous. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 477 (1996) (describing the PMS process as a 'rigorous one,' and noting that the FDA spends an average of 1,200 hours on each PMA submission). The manufacturer must submit a detailed PMA application that contains: full reports of all investigations of the safety and effectiveness of the device; a full statement of the components, ingredients, properties, and principles of operation of the device; a full description of the methods used in the manufacture and processing of the device; information about performance standards of the device; samples of the device; specimens of the proposed labeling for the device; and any other relevant information. *See* 21 U.S.C. § 360e(c).

*Id*. at 1034. "Devices that receive the PMA and comply with its requirements are entitled to the benefit of the MDA's express preemption provision[.]" *Id*. at 1036. The preemption provision reads:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
> (1) which is different from, or in addition to, any requirement applicable under this Act [21 U.S.C. §§ 301 et seq.] to the device, and
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this Act [21 U.S.C. §§ 301 et seq.].

21 U.S.C. § 360k(a). The Supreme Court explained that "[s]tate requirements are pre-empted under the MDA only to the extent that they are 'different from, or in addition to' the requirements imposed by federal law[,]" so the preemption provision "does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008).

As such, preemption analysis under the MDA has two steps. First, a court must determine whether the Federal Government has established requirements applicable to the particular medical device. *Id*. Second, if such requirements have been established then "the court must determine whether plaintiff's state-law claims would impose 'requirements with respect to the device that are different from, or in addition to' the federal requirements, and relate to either the 'safety or effectiveness' or 'any other matter included in a requirement applicable to the device under'" the MDA. *Smith v. Zoll Med. Corp.,* 2020 U.S. Dist. LEXIS 230245, at *19 (W.D. Tenn. Dec. 8, 2020) (quoting *Spier v. Coloplast Corp.*, 121 F. Supp. 3d 809, 816 (E.D. Tenn. 2015)). Preemption is overcome only when a plaintiff alleges a state claim that is based on a violation of FDA regulations *Riegel,* 552 U.S. at 330. These qualify as parallel claims that, when properly pled under the *Iqbal* and *Twombly* standards, provide an exception to federal preemption under the MDA. *Id*.

*B. Analysis of Jackson's Claim*

First, as to step one of the *Riegel* test, it is undisputed that the Device is a Class III medical device that underwent the PMA process. [DE 21 at 11]. Any device subject to the PMA process, such as the AICD, automatically satisfies the first condition of the *Riegal* test. *Engle v. Medtronic, Inc.*, No. 3:19-CV-909-RGJ, 2021 WL 1318322 (W.D. Ky. Apr. 8, 2021). Both parties also accept that prong one of the *Riegel* test is satisfied. [DE 21 at 16].

Having satisfied step one, the court turns to step two to determine if Jackson's claims rely on "any requirement" of Kentucky state law applicable to the Device that is "different from, or in addition to," federal requirements and that "relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device." § 360k(a). In *Lohr*, the court concluded that common-law causes of action for negligence and strict liability impose their own requirements and would be preempted by federal requirements. *Riegel,* 552 U.S. at 323. As such, Jackson's state-law claims challenging the design, manufacturing process, failure to warn, and negligence, are all preempted. Under *Cooley*, claims of breach of express and implied warranty of a PMA device are expressly preempted. *Cooley*, 2012 U.S. Dist. LEXIS 55878, at*12 (quoting *In re Medtronic, Inc., Sprint Fidelis Leads Prod. Liab. Litig.*, 623 F.3d 1200, 1208 (8th Cir. 2010)) ("The MDA preempts these [breach of implied and express warranty] causes of action because a jury would have to find that the devices were 'not safe and effective, a finding that would be contrary to the FDA's approval.'"). As a result of the holdings in *Riegel* and *Lohr*, six of the seven of claims raised within the complaint are preempted by the MDA: Count 1 for strict liability for a manufacturing defect, Count 2 for strict product liability for a design defect, Count 3 for strict product liability for failure to warn, Count 4 for breach of express warranty, Count 5 for breach of

implied warranty, and Count 7 for negligence. *Id.*[6] Additionally, as these claims are expressly preempted this court need not consider claims of implied preemption.

The only claim not expressly preempted is Jackson's claim for violation of the Kentucky Consumer Protections Act ("KCPA"). Jackson asserts that Abbott and St. Jude violated the KCPA as they "misrepresent[ed] the true quality of the Device and the health risks associated" with the Device, essentially alleging that warnings and standards approved by the FDA were insufficient. [DE 1 at 9 ¶. 66-69]. Abbott and St. Jude correctly state that federal preemption bars claims where "success on the claim would require [the manufacturer] to have provided different or additional warnings from those approved by the FDA." *Cooley*, 2012 U.S. Dist. LEXIS 55878, at*12. Thus, because Jackson's consumer protection claim would require Abott and St. Judge to provide warnings other than those approved by the FDA, the claim is expressly preempted by the MDA.

3. *Sufficiency of Pleading*

Having found the state law claims preempted, the Court must determine whether any claim is a sufficiently pleaded parallel claim that can provide an exception to preemption. *Spier*, 121 F. Supp. 3d 816. In his response, Jackson cites the now overruled pleading standards of *Conley* to support his contention that his claims were parallel. However, under the modern pleading standards set forth in *Twombly* there is nothing that remains to serve as a parallel claim. A claim is only plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To properly plead a parallel claim, it is not enough to merely state in a response that the claims are "consistent with the concept that Abbott and St. Jude violated the Federal protocols." [DE 21 at 16]; *Spier,* 121 F. Supp. 3d 809. Such a statement,

---

[6] Additionally, Jackson's claim for punitive damages (Count 8) is "actually a prayer for relief, not a separate cause of action[.]" *Baird*, 2013 WL 5890253, at *10

9

without any actual reference to regulations or their violation, is no more than a bare conclusion which the district court cannot accept as sufficient pleading. *Tackett*, 561 F.3d 488. If the complaint itself never makes any reference to the regulations themselves the parallel claim exception does not apply, and the claim remains preempted. *Spier*, 121 F. Supp. 3d 809. Jackson's complaint never mentioned federal regulations. He never connected any of his various state law claims to federal regulations beyond the bare conclusion noted above. As such, there is no parallel claim. The Court need not delve into the *Twombly* analysis for specific state law claims where no parallel claims were stated that could provide relief. *Id*.

It is still uncertain whether it is "sufficient to allege that the Defendants violated FDA regulations by deviating from the FDA-approved processes and procedures in the PMA or, instead, "[if] the Plaintiffs [must] identify the particular FDA regulations and set forth facts pointing to the particular PMA requirements that are alleged to have been violated." *Waltenburg v. St. Jude Med., Inc.,* 33 F. Supp. 3d 818, 829 (W.D. Ky. 2014) (collecting cases). Although Jackson correctly indicates that previous decisions have ruled against dismissal at this stage in order to provide the opportunity for discovery, the facts and pleadings of such cases are distinct from Jackson's complaint. In all such cases there is some reference to FDA regulations that could indicate a parallel claim. In *Engle*, the complaint "cites to a myriad of federal regulations, recalls, and FDA communications which she claims were violated during the manufacture of the Device." *Engle,* 2021 WL 1318322. In *Stengel v. Medtronic Inc.*, the amended complaint states that under federal law, Medtronic had a "continuing duty to monitor the product after pre-market approval and to discover and report to the FDA any complaints about the product's performance and any adverse health consequences of which it became aware." 704 F.3d 1224 (9th Cir. 2013). Again, Jackson's complaint makes no reference to the PMA process or FDA regulations, let alone a violation of

them. Even under the more lenient approach taken in some decisions, the court can find no parallel claim that would justify discovery.

In response, Jackson alleges that all of his state law claims qualify as parallel claims as they are "consistent with the concept that Abbott and St. Jude violated the Federal protocols." [DE 21 at 183]. Jackson relies on a 9th circuit case, *Stengel*, in which the court found most of the claims raised to be preempted but found that a specific state duty to warn claim paralleled FDA regulations. *Id*. at 1233. However, in *Stengel* the complaint itself refered to the FDA regulations when alleging a parallel claim under state law specifically alleging that, under federal law, Medtronic had a "continuing duty to monitor the product after pre-market approval and to discover and report to the FDA any complaints about the product's performance and any adverse health consequences of which it became aware." *Stengel,* 704 F.3d at 1233.[7] Jackson also cites to *Russell v. Johnson* to support his contention of a parallel claim. *Russell v. Johnson & Johnson, Inc*., 610 S.W.3d 233 (Ky. 2020). Yet *Russell* is a state court case applying state court pleading standards for a motion for judgment on the pleadings pursuant to CR 12.03, not a motion to dismiss. *Id*. As such it does not apply to the case at hand.

As to Jackson's references to past recalls, previous cases have explicitly ruled that "the FDA's recall of a PMA Class-III medical device does not give rise to a claim capable of surviving federal preemption." *Wheeler v. Frank,* Case No. 2010-cv-9016, 2012 Colo. Dist. LEXIS 2832, *4 (2012) (citing *In re Medtronic, Inc. Sprint Fidelis Leads Prod. Liab. Litig*., 592 F. Supp. 2d 1147 (D. Minn. 2009)). This is because "[t]he FDA, too, recognizes the distinction between the recall of a device and the revocation of a device's PMA. *In re Medtronic, Inc. Sprint Fidelis Leads*

---

[7] The Plaintiff in *Stengel* specifically alleged that the Arizona Duty to warn paralleled a federal duty to report adverse events to the FDA. *Stengel,* 704 F.3d at 1233.. Jackson does not specifically reference this duty or allege any facts consistent with this claim.

11

*Products Liability Litigation*, 592 F. Supp. 2d at 1155.  Furthermore, the alleged recalls occurred anywhere from seventeen months to seven years prior to the implantation of Jackson's Device, and it is uncertain what impact they have on the current Device.  As a result, mere reference to past recalls is not enough to properly plead a parallel claim.

## IV.   CONCLUSION

For the foregoing reasons, and being otherwise sufficiently advised, **IT IS ORDERED** that request for Judicial Notice is **GRANTED**, and the Motion to Dismiss filed by Abbott and St. Jude [DE 12] is **GRANTED**.

Rebecca Grady Jennings, District Judge
United States District Court

September 19, 2024